BUSH, RECEIVER, ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* ALTSCHUL.

## Opinion delivered March 12, 1917.

1.  CARRIERS — SHIPMENT OF LIVE STOCK — LOSS — DAMAGES — HOW PROVED.—Where some of a shipment of cattle died during transit because of defendant carrier's negligence, the measure of damages will be their market value at the point of destination; and to prove this value a trader or dealer in live stock, or a person who is qualified by experience, may give evidence as to the value of cattle, hogs, and other animals that have a market value although he may never have seen those which are the subject of this litigation.

2.  EVIDENCE—DAMAGE TO SHIPMENT OF CATTLE—CONDITION OF RAILWAY PENS.—In an action for damages against a carrier growing out of the negligent handling of a shipment of cattle, *held,* testimony of the shipper as to the condition of certain of defendant's

stock pens, at a place where the cattle were kept several days, from observations made six months after the occurrence of the injury, is admissible.

3. APPEAL AND ERROR—FAILURE TO INSTRUCT ON SPECIFIC ISSUE— HARMLESS ERROR.—The failure of the court to give an instruction upon a certain issue will be held harmless error, when, in an action for damages, the verdict of the jury showed that no damages were awarded on that issue.

4. CARRIERS—SHIPMENTS OF LIVE STOCK—CARE OF.—Railways carrying live stock must provide suitable yards and facilities for resting, feeding, watering and protecting the cattle in transit.

5. CARRIERS—INJURY TO SHIPMENT OF CATTLE—DAMAGES—JURY QUESTION.—In an action for damages to a shipment of cattle, due to negligence. *Held,* under the evidence that it was solely a question for the jury to determine the amount of damages sustained, and that it was improper for the trial judge to disturb the jury's verdict.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; modified and affirmed.

*E. B. Kinsworthy* and *W. G. Riddick,* for appellant.

1. There was error in rendering judgment in excess of the amount found by the verdict of the jury. There was no testimony as to "rough-handling" by the company. The court had no power to add to the verdict of the jury. 41 Ark. 121; 33 *Id.* 56; 29 *Id.* 597; 23 Cyc. 820; 99 Ark. 490; 102 *Id.* 460; 97 *Id.* 438; 82 *Id.* 86; 88 *Id.* 550; 38 Cyc. 1899; 22 Enc. Pl. & Pr. 917.

2. There were errors in the admission of evidence. Over the objection of defendant, the deposition of C. C. Stewart was read to the jury. It was hearsay and incompetent.

J. I. Altschul's testimony, as to condition of pens, was prejudicial.

3. The court erred in its instructions. Floods and washouts are the act of God and railroad companies are not liable for delays or damages resulting therefrom. 99 Ark. 363; 1 Michie on Carriers, 620.

4. There is error in the giving and refusal of instructions. 2 Michie on Carriers, 1279, and cases *supra.*

*Hal L. Norwood,* for appellee.

1.   As the uncontradicted proof showed that appellee sustained damages to the amount of $103.90, on account of crippled cattle, caused by the negligence of appellant, the court did right in rendering judgment for the $103.90. The jury allowed nothing for delay, evidently believing it was caused by washouts, but they did believe appellant guilty of negligence in caring for the cattle at Hoxie. The proof was that the pens were small, had no cover, but dirt floors, and were wet and muddy, and that the cattle were not properly cared for, nor fed.

2.   C. C. Stewart's testimony was competent.  4 R. C. L., § 467.

3.   Eight witnesses testified that the cattle were in good condition when shipped.  Altschul's testimony was competent.

4.   There is no error in the instructions.  4 R. C. L., § § 433, 436.  The verdict and judgment are really too small, under the proof.

HUMPHREYS, J.  Appellee shipped forty-eight head of cattle on January 29, 1916, over appellant's railroad from Argenta, Ark., to East St. Louis, Ill.  Thirty-five head of these cattle reached their destination, and were delivered to the consignee on February 10, thereafter.  Two head died while en route to Hoxie, Ark., seven head while at Hoxie, and four between Hoxie and Illmo. Four head were badly crippled.  Another shipment was made by appellee on February 12, 1916, from Argenta, Arkansas, to East St. Louis, and one died enroute.  Appellee filed suit against appellant in the Pulaski Circuit Court, claiming damages in the sum of $541.50, on account of the carelessness and negligence of appellant in handling the first shipment; and for $21.42 on account of carelessly and negligently handling the second shipment. The itemized statement of damages on the first shipment is as follows:

To 60 lbs. per head extra shrinkage account of delay on 19 cattle; 1,140 lbs. at $4.33 ave. price plus 50c per cwt. decline in market and depreciation in value......................................................$ 55.06

To 35c per cwt. decline in market, ana 15c per cwt.
    depreciation in value account delay on 10,530
    lbs. ................................................................................ 52.65

To 30 lbs. per head extra shrinkage account delay
    on 11 yearlings and calves; 330 lbs. at $4.85
    ave. price they brought, plus 15c per cwt. de-
    preciation (or amount more they should have
    brought had they been earlier)................................ 16.50

To damage to 4 cows and one steer injured—aver-
    age value $29.70 each—$148.50, minus $44.60
    salvage ............................................................................ 103.90

To 6 ave. grown cattle short................................................ 178.20

To 7 ave. yearlings short.................................................... 87.71

To extra feed bill enroute................................................. 47.50

       Total..........................................................................$541.52

and on account of the second shipment, is $21.42.

Appellant answered and denied every material alle-
gation in the complaint. The jury returned the following
verdict: "We, the jury, find the plaintiff suffered dam-
ages on account of the negligence of the defendant as
follows:

(1)   Cattle killed ..........................................................$150.00
(2)   Cattle crippled ...................................................... 50.00

                      "H. W. Forte, Foreman."

On the theory that the undisputed evidence showed
that the cattle killed were of the value of $265.91, and that
the cattle crippled were damaged $103.90, the appellee
moved the trial court for judgment in the sum of $391.21.
The trial court overruled the motion except as to the dam-
age to the crippled cattle. As to them, he increased the
amount from $50, as found by the jury, to $103.90, and
rendered a total judgment for $253.90.

Appellant took the necessary steps to preserve his
exceptions in the conduct of the case, and has appealed the
cause to this court.

(1)   Appellant contends that the trial court com-
mitted reversible error in permitting C. C. Stewart to give
testimony as to the value of the thirteen dead cattle, and

the damage to the four cattle crippled.  Mr. Stewart was an employee of the consignee and had been engaged in buying and selling cattle on that market for twenty years. The stock contract issued by appellant was for thirty cows and eighteen yearlings.  Six cows and seven yearlings had died and were missing when the car of cattle reached its destination.  Taking into consideration the cattle that did reach the stock yards as a basis, Stewart estimated the value of the six dead cows at $178.20, and the seven dead yearlings at $87.71.  These cattle were bought from three parties and shipped in one lot.  The shipper had owned them only a short time, and had no way to identify each animal.  The measure of damages for those lost would have been their market value at the point of destination.  In the case at bar, the consignee or some one familiar with the market value at the point of destination must estimate the value of those lost and the damage to those living.  No one could do that better than a witness of experience like Stewart, and he must necessarily do it by a general average price, it being impossible to identify and value each animal.  In Ruling Case Law, volume 4, section 467, it is said that "a trader or dealer in stock, or a person who is qualified by experience, may give evidence as to the value of cattle, hogs, and other animals that have a market value, although he may never have seen them."  The statement of the text is liberally supported by authority.

(2)  Appellant contends the court erred in admitting the testimony of J. I. Altschul with reference to the condition of the stock pens at Hoxie in June, 1916, some four or five months after the cattle had been detained in the pens.  He said the pens were small; part of them recently refilled with rock; two of them still wet and muddy; feed racks insufficient; and that no shelter was over the pens. These pens were pointed out to the witness by an employee of appellant as the pens where appellee's cattle were kept and fed from January 30 to February 9.  Stock pens are not temporary affairs.  They are permanent, and their character and condition would continue to be

about the same for a long period of time. It is clearly inferable from J. I. Altschul's testimony, taken in connection with other facts in the case, that the condition of the pens in June was about the same as in January and February. The only evidence of any change was that rock had been recently put in part of the pens. Had any material change been made in the pens between January and June of the same year, appellant could easily have shown it.

(3)   It is contended that the trial court erred in giving instructions Nos. 1, 2 and 7, asked by appellee, for the reason that the instructions ignored the right of appellant to attribute the delay in transit to an act of God, instead of its negligence. The undisputed evidence showed that the delay was caused by washouts. It is true these instructions made no exceptions limiting the liability of appellant on account of unavoidable washouts in specific words; but when all the instructions given are read together, it is quite plain the jury was permitted to render a verdict for damages, if any, resulting from the negligent acts of appellant only, and not damages resulting from an act of God. Instruction No. 17, given by the court, is as follows. "You are instructed that if you find that the delay in the shipment was caused without any fault on the part of the defendant, then your verdict should be for the defendant on the alleged damage resulting from delay." The jury understood that if the delay in transit was caused by unavoidable washouts, no damages resulting from the delay could be adjudged against appellant. The verdict returned by it excluded all items of damage resulting from delay. The items of shrinkage, decline in market value and feed bill resulting from the delay, were omitted from the verdict. There is no evidence in the record tending to show that the delay killed or crippled the cattle, and the verdict of the jury covered these two items only; hence, the appellant was not prejudiced on account of these instructions, and can not complain.

Appellant contends that error was committed in refusing to give instructions Nos. 11 and 12, which, in sub-

stance, exempted appellant from liability for delay in transit, if the delay was caused by unprecedented floods. The verdict did not contain any item of damage caused solely by delay, so appellant was not prejudiced by the refusal to give these instructions. No useful purpose could have been accomplished by giving them, as the same idea was manifest in other instructions given by the court.

Appellant contends that the court erred in giving appellee's instruction No. 6, because it told the jury it was the duty of appellant to provide suitable yards and necessary facilities for caring for livestock shipped over its line, instead of telling them it was the duty of appellant to use ordinary care to provide such pens, etc. The imposition on common carriers of the duty to provide necessary and suitable yards, and the facilities for caring for stock, in no way implies the burden of extraordinary care; but even if inferable from the language used, that more than ordinary care was required, the jury was precluded from drawing such an inference by the following instruction given at the instance of appellant: "You are instructed it was the duty of the defendant to use ordinary care and reasonable diligence to handle the cattle to destination, and to provide suitable stock pens, under all the circumstances of the case."

(4) But appellant insists that there is a total want of evidence to show that the pens were at all unsuitable, or improperly maintained, for the purposes for which they were constructed. The evidence tends to show that forty-six head of cattle were confined for ten days in small pens, with poor facilities for feeding and no shelter. "Roughing cattle through" is the practice in some localities. Where that method of raising cattle is in vogue, the cattle as a usual thing have broad acres over which to roam, and are somewhat protected during inclement weather by bluffs, hillsides and timber. Crowding a large number of cattle in small pens in midwinter without shelter and ample facility for feeding is in effect "roughing them through," and smacks rather of cruel treatment to animals than the exercise of ordinary care for their com-

fort and protection. The rule, supported by the weight of authority, is that the railroad companies carrying live stock must provide suitable yards and facilities for resting, feeding, watering and protecting the cattle in transit. R. C. L., vol. 4, secs. 433, 436 and 438.

(5) Appellant contends that the trial court erred in raising the verdict from $50 to $103.90 on account of the item of damage for crippling................head of cattle in transit. This raise was on the theory that the undisputed evidence showed the ................head of cattle in question were damaged $103.90. This amount was only the estimated amount made by the expert witness, C. C. Stewart. It was opinion evidence only, and should have gone to the jury with all other evidence tending to show the condition and value of the cattle. Much evidence tended to show the cat-. tle were weak when shipped, and unable to stand a long, hard journey. Two of them died on the car on the first run from Argenta to Hoxie. Seven of them died while in the pens, and four of them on the run from Hoxie to Illmo. It is largely problematical as to when and where the crippled cattle were injured. Under the facts and circumstances of this case, the right to fix the amount of damages was within the exclusive province of the jury. The court erred in raising the verdict.

The judgment is, therefore, reversed and modified so as to conform to the verdict of the jury.